**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**                    CASE NO. 3:24 CR 449

Plaintiff,

v.                                                                JUDGE JAMES R. KNEPP II

**TAYLOR WATSON,**

Defendant.                                          **MEMORANDUM OPINION AND**
**ORDER**

### INTRODUCTION

Currently pending before the Court is Defendant Taylor Watson's Motion to Suppress. (Doc. 10). The Government has opposed (Doc. 11), and Watson replied (Doc. 12). For the reasons set forth below, the Court denies the motion.

### BACKGROUND

Supervision

In state court, in April 2017, Watson was convicted of attempt to commit escape, a felony. (Doc. 11-1). He was sentenced to 30 months imprisonment followed by a period of post-release control. *Id.* Watson's post-release control began on October 9, 2019. *See* Doc. 10-1, at 1. The parties both attach a document he signed listing the conditions of his post-release control on June 23, 2023. *Id.* at 1-2; Doc. 11-2, at 1-2. One of the listed conditions is: "I agree to the warrantless search of my person, motor vehicle, place of residence, personal property, or property that I have been given permission to use, by my supervising officer or other authorized personnel of the Ohio Department of Rehabilitation and Correction at any time." (Doc. 10-1, at 1).

In federal court, in April 2022, Watson was convicted on a charge of felon in possession of a firearm. (Doc. 11-3). He was sentenced to 25 months imprisonment followed by three years of supervised release. *Id.*

Watson is currently serving both state and federal terms of supervision.

April 2024 Burglary Charge and Phone Seizure

In April 2024, Watson's state supervising officer, Toni Lozano, learned there was a warrant for Watson's arrest based on a burglary charge. (Doc. 10-2, at 1). The burglary charge was based on information stating that on April 20, 2024, Watson entered a residence where his girlfriend was sleeping, got into an altercation with her, "smashed" her television and cell phone, and took some of her property. *See id.*; *see also State v. Watson*, No. CRA-24-03445-0101 (Toledo Municipal Ct.). The Government represents that the girlfriend "showed police a video Watson made, recording himself inside her bedroom." (Doc. 11, at 3). It also asserts that the night prior to the incident, the girlfriend "told Watson to stop calling and texting her." *Id.* at 4.

Lozano met with and arrested Watson on April 22, 2024. (Doc. 10-2, at 2). Lozano's report states she "seized" Watson's cell phone "for investigation purposes." *Id.* The Government represents that "Watson provided Lozano with the unlock code for his cell phone" and "[a]t Watson's request, Lozano viewed the contents of his cell phone." (Doc. 11, at 4). In reply, Watson contests the second part of this assertion. He represents that he "never consented to the search of his cellphone", and that the officer "took the phone from him when he was arrested" and "took [t]he phone a second time from the booking officer." (Doc. 12, at 3). Watson "denies asking his parole officer to look through [h]is phone either time." *Id.* Lozano then searched the cell phone and found a short video from April 20, 2024, depicting a hand holding a firearm. (Doc. 10-2, at 2). Lozano was able to make out the serial number on the firearm (a Taurus G3C

2

9mm pistol) from the video. *Id.* The Government represents that while holding the firearm in the video, the man said, "I keep a little pee shooter while you all think I am slipping on shit." (Doc. 11, at 4). The Government also represents that Lozano recognized the voice as Watson's and that Watson's federal supervised release officer "also viewed the video and recognized Watson's voice." *Id.*

Investigation

Lozano contacted ATF Task Force Officer Dan Van Vorhis, who traced the serial number and identified the purchaser of the gun as Dionate Jordan King. They contacted King and his brother, Brian Allison, in May 2024, and retrieved a firearm matching the make, model, and serial number from the video. The Government represents that King and Allison both indicated they knew Watson and had contact with him as recently as April 20, 2024. *Id.* at 5. The Government further represents that Allison "indicated Watson had access to the Taurus firearm", specifically that "Allison informed Watson that the firearm was in his backpack and left Watson alone with the backpack." *Id.*; *see also* Doc. 10-4, at 6 (search warrant affidavit stating that "Allison said he remembers telling Watson there was a firearm in his backpack. Allison said that he does remember getting out of Watson's truck and leaving the backpack a few times. Allison thought maybe during one of those times, Watson grabbed his Taurus from his backpack.").

Search Warrant

On August 12, 2024, Van Vorhis submitted an affidavit in support of a search warrant for the cell phone. (Doc. 10-4) (warrant package). Therein, he detailed the burglary charge and Lozano's arrest of Watson. *Id.* at 4. He stated that Watson provided Lozano the unlock code for the phone. *Id.* He further asserted that Lozano reviewed the contents of Watson's phone and located the at-issue video, stating that "[i]n this video, Watson's hand is holding a Taurus G3C,

.9 mm firearm" and that the serial number is visible. *Id.* Van Vorhis further cited Watson's supervision terms and conditions stating that he agreed to "warrantless searches of [his] . . . personal property . . . at any time." *Id.* at 5. Van Vorhis also detailed the interview of Allison as set forth above. *Id.* at 6. Van Vorhis stated he reviewed the pictures and video on Watson's phone and that the firearm in the video appeared to be the same firearm he obtained from Allison. *Id.* He thus concluded there was probable cause to believe Watson possessed the firearm and evidence related to that crime would be found on the phone. Magistrate Judge Darrell A. Clay issued the requested search warrant.

Pursuant to the warrant, Watson states that law enforcement found more videos and photos purporting to show Watson in possession of firearms. (Doc. 10, at 3).

Watson was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. 1).

Ohio Adult Parole Authority Violation Hearing

Watson had a violation hearing before the Ohio Adult Parole Authority. *See* Doc. 10-3 (Notice of Findings of Release Violation Hearing dated August 27, 2024). He was accused of, *inter alia*, having had a firearm in his possession or control on or about April 20, 2024. *Id.* at 1. The video was submitted as an exhibit at the hearing, and Allison testified. *Id.* at 2. Allison testified that he had the gun in his backpack, but never saw Watson with it. *Id.* The defense did not present evidence, but Watson held up both of his hands at the hearing, and the hearing officer observed in her findings that "[b]oth of his hands are covered with tattoos." *Id.*[1] The hearing officer found no guilt established on the violation related to possessing the firearm. *Id.*

---

1. Watson also attaches an unofficial transcript of the proceeding in which the hearing officer says: "And the video, I played it numerous times. The person had no tattoos on their hands, so

4

## STANDARD OF REVIEW

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* To establish probable cause, officers must establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231); *see also Gates*, 462 U.S. at 231 (highlighting the "common-sense conclusions about human behavior" that are integral to an analysis of probable cause); *Florida v. Harris*, 568 U.S. 237, 244 (2013) (describing a "practical and common-sensical standard" underlying the analysis of probable cause).

In assessing the sufficiency of an affidavit supporting a warrant, the Court looks only to the four corners of the affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). To encourage use of the warrant procedure, a magistrate judge's probable cause determination is

---

Mister Watson [] is covered in tattoos on his hand. So I know that is not him holding it[.]" (Doc. 10-5).

afforded "great deference" and should be reversed only if the issuing judge arbitrarily exercised his discretion. *Gates*, 462 U.S. at 236 (quotation omitted); *see also United States v. Baker*, 976 F.3d 636, 646 (6th Cir. 2020) (recognizing courts' obligation to give issuing judges the benefit of the doubt in "doubtful or marginal cases"); *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) ("[W]e may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority."); *United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir. 2009) ("[S]o long as the magistrate had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.").

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979). But warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993); *Payton v. New York*, 445 U.S. 573, 586 (1980). So once a defendant shows that the government has performed a warrantless search or seizure, "[t]he government has the burden of proving the legality of [the] warrantless search," *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (citation omitted), by a preponderance of the evidence, *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

Watson moves to suppress any and all evidence obtained as a result of the search of his cell phone by his state parole officer, and the subsequent federal search of the phone based on a search warrant. (Doc. 10). In response to Watson's motion, the Government offers two arguments: (1) the search warrant was not necessary because law enforcement lawfully searched Watson's phone under the special needs test and the totality of the circumstances test; and

6

alternatively, (2) the affidavit provided a substantial basis upon which to find probable cause, and even if it did not, officers acted in good faith reliance on the warrant. (Doc. 11). In reply, Watson asserts neither parole search doctrine (special needs or totality of the circumstances) justifies the search of the phone because reasonable suspicion is required to support both, and it is lacking here. (Doc. 12). He further contends the search warrant was "bare bones" and thus lacking in probable cause. *Id.*

For the reasons set forth below, the Court finds the state parole officer lawfully searched Watson's phones under the special needs test and/or totality of the circumstances test, and the search warrant affidavit provided a substantial basis upon which to find probable cause.

Search of an Individual on Post-Release Control

Watson was on state post-release control and federal supervision at the time of the at-issue search. "The touchstone of the Fourth Amendment is reasonableness[.]" *United States v. Knights*, 534 U.S. 112, 118 (2001). "[T]he warrant and probable cause requirements generally do not apply to searches of parolees, probationers or their residences." *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008). Reasonableness of a search in these circumstances involves balancing "the degree to which [the search] intrudes upon an individual's privacy" as well as "the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (citation omitted).

As the Sixth Circuit explained, "[o]ne factor central to this balancing inquiry is an individual's status on the 'privacy continuum.'" *Smith*, 526 F.3d at 308 (quoting *Wilson v. Collins*, 517 F.3d 421, 425 n.2 (6th Cir. 2008)); *see also Knights*, 534 U.S. at 113 (an individual's "status as [one] subject to a search condition informs both sides of that balance."). "At one end of the continuum are free citizens, who enjoy 'absolute liberty.'" *Smith*, 526 F.3d at

308-09 (citing *Knights*, 534 U.S. at 119). "Probationers have fewer expectations of privacy than free citizens and parolees have still 'fewer expectations of privacy than probationers[.]'" *Id.* at 309 (quoting *Samson*, 547 U.S. at 850). "At the other end of the spectrum are inmates, who have no legitimate expectation of privacy from searches of their prison cells." *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984)). Probationers have a "significantly diminished" reasonable expectation of privacy when the probationer is subject to a search condition and "unambiguously informed" of that condition. *Knights*, 534 U.S. at 119-20. Meanwhile, "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Samson*, 547 U.S. at 850.

On the other side of the balancing is the State's interest in supervision of parolees. The Supreme Court has described this interest as an "overwhelming" one. *Samson*, 547 U.S. at 853; *see also United States v. Sharp*, 40 F.4th 749, 753 (6th Cir. 2022) ("Ohio has a significant interest in supervising parolees.").

A warrantless search of an individual under criminal supervision is reasonable under the Fourth Amendment if it satisfies either of "two distinct doctrinal frameworks[.]" *Herndon*, 501 F.3d at 687-88. "First, under the 'special needs' test set out in *Griffin v. Wisconsin*, a parolee search is reasonable if it is conducted in accordance with a constitutional state law authorizing warrantless searches." *Sharp*, 40 F.4th at 752-53 (citing *Griffin*, 483 U.S. 868, 880 (1987). "Alternatively, a parolee or probationer search may be deemed reasonable by examining the 'totality of the circumstances.'" *Id.* at 753 (quoting *Samson*, 547 U.S. at 848).

*Special Needs Test*

Watson was on post-release control and under the supervision of the Ohio Adult Parole Authority at the time of the search. Therefore, the parties agree, he was subject to Ohio Revised Code § 2967.131(C), which provides:

> (C)(1) During the period of a conditional pardon or parole, of transitional control, or of another form of authorized release from confinement in a state correctional institution that is granted to an individual and that involves the placement of the individual under the supervision of the adult parole authority, and during a period of post-release control of a felon imposed under section 2967.28 of the Revised Code, authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if any of the following apply:
>
>> (a) The field officers have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's conditional pardon, parole, transitional control, other form of authorized release, or post-release control.
>>
>> (b) The adult parole authority requires the individual's or felon's consent to searches as part of the terms and conditions of the conditional pardon or parole, of the transitional control, of the other form of authorized release from confinement in a state correctional institution that is granted to a person, or of the post-release control and that involves the placement of the person under the supervision of the adult parole authority, and the individual or felon agreed to those terms and conditions, provided that this division applies with respect to an individual only if the individual is a felon.
>>
>> (c) The individual or felon otherwise provides consent for the search, provided that this division applies with respect to an individual only if the individual is a felon.

Ohio Rev. Code § 2967.131(C).

The Sixth Circuit has held that "Ohio's parolee search statute, Ohio Rev. Code § 2967.131(C), passes constitutional muster." *Sharp*, 40 F.4th at 753 (citing *United States v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003)). Thus "the only question under the "special needs" framework is whether [the parole officer's] search complied with § 2967.131(C)." *Id.*

### Reasonable Grounds

The Government first argues the search was justified because parole officers had reasonable grounds to believe Watson was not abiding by the law or otherwise complying with the conditions of his post-release control under § 2967.131(C)(1)(a). The Sixth Circuit has found "reasonable grounds" under this Ohio statute to be synonymous with "reasonable suspicion." *See United States v. Goliday*, 145 F. App'x 502, 505 (6th Cir. 2005). "Reasonable suspicion exists if, based on the totality of the circumstances, the officer's suspicion has 'a particularized and objective basis.'" *Sharp*, 40 F.4th at 753 (citation omitted).

The Government contends the state parole officer had reasonable grounds to search, as the burglary victim told police that (1) Watson forced entry into her house and assaulted her, (2) showed police a video Watson made recording himself inside her bedroom, getting into her bed while she slept, and (3) she had previously told Watson to stop calling and texting her. (Doc. 11, at 10). Therefore, the Government asserts, there were reasonable grounds to believe that Watson likely used his cell phone to make the video in the victim's bedroom and that it was likely to contain evidence related to the burglary or to corroborate the victim's story. *Id.* Watson responds that although the Government "asserts in its brief that B.L. showed police a video of Mr. Watson in her bedroom", it "fails to provide the necessary context for this assertion to be reliable" and contends the Government "assumes that Mr. Watson likely used his own cellphone to make that video", but the "missing links betray that assumption" and a hearing is necessary "to resolve the

questions of who made the video, when it was made, what device was used to make it, and whether it is related at all to the investigation that led to these charges." (Doc. 12, at 5).

The Court finds the state parole officer had reasonable grounds to believe Watson was not in compliance with the terms of his post-release control, Ohio Revised Code § 2967.131(C)(1)(a), and that evidence thereof might be found on his cell phone. The parole officer knew that Watson had been accused of a burglary. The victim of that burglary showed police a video of Watson in her bedroom and asserted that she had told Watson to stop calling and texting her. Watson does not directly dispute these assertions, but contends the Government merely "assumes that Mr. Watson likely used his own cell phone to make that video." (Doc. 12, at 5). The Court disagrees with Watson's assertion that this is an assumption law enforcement was not entitled to make in assessing reasonable suspicion. Reasonable suspicion is a low bar. *United States v. Williams*, 68 F.4th 304, 308 (6th Cir. 2023). It "requires only that the officer have 'a moderate chance' of finding evidence of illegality on further investigation." *Id.* (quoting *United States v. McCallister*, 39 F.4th 368, 373-74 (6th Cir. 2022)). Being accused of a burglary and evidence of a video seemingly taken at the location of that burglary are certainly more than enough for the parole officer to establish a "moderate chance of finding evidence of illegality on further investigation." *Id.* (internal quotation omitted). Additionally, the victim's assertion that she had instructed Watson to stop calling and texting her provides further support of the suspicion that the phone might contain evidence related to the alleged crime.

This alone provides sufficient justification for the parole search of the phone under the special circumstances test. Nevertheless, because the parties also present arguments regarding consent and the totality of the circumstances, the Court addresses each in turn, in the alternative.

11

**Consent**

The parties next dispute whether Watson consented to the search. Watson argues that his post-release control conditions did not specifically allow for a search of his phone, and thus a warrantless search was not permitted. The Government disputes this, arguing the conditions allowed for the search, and distinguishing the case law Watson cites. The Government also contends Watson consented to the search by providing Lozano the unlock code and requesting Lozano view the contents of his phone. Watson disputes that he asked Lozano to look through his phone.[2] The parties also dispute (1) whether Watson's post-release control conditions permitted suspicionless searches, and (2) if the state parole officer had reasonable suspicion to search his phone.

First, the Court agrees with the Government that Watson's conditions of supervision did not need to explicitly include reference to electronic devices to permit a search of the phone. The condition provided that Watson "agree[d] to the warrantless search of [his] . . . personal property, or property that [he] ha[d] been given permission to use[] by [his] supervising officer or other authorized personnel of the Ohio Department of Rehabilitation and Correction at any time." (Doc. 10-1, at 1). The Sixth Circuit, in an unpublished disposition, determined that a federal supervised release condition that permitted the warrantless search of "any property under his control" authorized the search of electronic devices. *United States v. Ramadan*, 2024 WL 4144497, at *2-3 (6th Cir. 2024). Chief Judge Jeffrey Sutton clearly explained this point, distinguishing the same cases upon which Watson attempts to rely here:

> Ramadan counters that the government needed to specify in this condition that "any property" included the contents of his electronic devices. As support, he points to cases that excluded evidence obtained from warrantless searches of

_____

2. He does not explicitly dispute the Government's assertion that he provided Lozano with the unlock code.

> arrestees' and probationers' cell phones. *See United States v. Fletcher*, 978 F.3d 1009, 1019 (6th Cir. 2020); *Riley v. California*, 573 U.S. 373, 396-97 (2014). But these Fourth Amendment cases do not tell us how to interpret the language of a condition of supervised release. Individuals on supervised release have fewer liberty interests than arrestees or probationers. *See Fletcher*, 978 F.3d at 1018-19. Hence the government's authority to require them to submit to searches with or without probable cause and with or without a warrant. Hence the reality that the exclusionary rule does not apply in revocation proceedings. *See United States v. Robinson*, 63 F.4th 530, 536 (6th Cir. 2023). His electronic devices were readily covered by this condition's capacious reference to "any property under his control."

*Id.* at *3. Watson further attempts to distinguish *Ramadan* based on the fact that it applied a plain error review standard. But Judge Sutton was clear: "He owned the computer devices. So he cannot plausibly deny that they were property under his control. Nor can he deny that he refused to submit to a search of them. *No error occurred*, much less one that was obvious or clear." *Id.* (citation modified). Although not binding, as an unpublished decision, the Court finds *Ramadan* persuasive authority and that Watson's supervision condition allowing for the search of "personal property" included electronic devices including his cell phone.

The Court further agrees with the Government that the conditions of Watson's post-release control permitted warrantless searches.

*Totality of the Circumstances*

Finally, the Government contends that the search of Watson's cell phone by the state parole officer did not violate the Fourth Amendment because "under the totality of the circumstances, Watson was subject to suspicionless searches." (Doc. 11, at 13). Watson responds that even if he was subject to warrantless searches, he was not subject to suspicionless ones. The Court finds it need not reach the question of whether Watson's conditions permitted suspicionless searches, but finds that under the totality of the circumstances, the search was constitutional.

As the Sixth Circuit summarized in *Sharp*, the totality of the circumstances test includes consideration of the "[r]elevant factors []: (1) a person's position on the 'continuum' of criminal punishments; (2) the terms of the search condition communicated to the person; and (3) the State's interest in supervision." 40 F.4th at 753 (citation modified).

As to the first factor, Watson's interest as an individual on post-release control significantly diminished his reasonable expectation of privacy. *See id.* ("Sharp's status as a parolee 'severely diminished' his expectations of privacy[.]") (quoting *Samson*, 547 U.S. at 852)). As to the third factor, the State's interest is "overwhelming", *Samson*, 547 U.S. at 853, and "significant[,]" *Sharp*, 40 F.4th at 753.

As to the second factor, the parties dispute the meaning of Watson's conditions of post-release control. The at-issue condition provides in relevant part that Watson "agree[d] to the warrantless search of [his] . . . personal property . . . by [his] supervising officer or other authorized personnel of the Ohio Department of Rehabilitation and Correction at any time." (Doc. 10-1, at 1). The Government contends, in essence, that "at any time" is broad, means what it says, and provides consent to suspicionless searches. Watson, to the contrary, contends that "[s]upervision terms must include an express suspicionless search provision to justify a completely suspicionless search[.]" (Doc. 12, at 4).

The Sixth Circuit in *Sharp* confronted a similar condition to the one at issue here. *See* 40 F.4th at 753 n.1 ("The conditions form states that Sharp agreed to 'the warrantless search' of his person and property by certain authorized personnel "at any time.'"). Although it found the argument forfeited, it distinguished such a condition from one that authorized suspicionless searches:

> On appeal, the government offers an alternative, and brand-new, argument supporting the search: The officers didn't need reasonable suspicion at all. The

government points out that *Samson* authorizes suspicionless searches of parolees "if the release conditions permit[ ] it." Appellee Br. at 19. And that's the case here, the government says, because Sharp's search conditions permitted "warrantless search[es]" of his residence "at any time." *Id.* at 22.

There is no reason to entertain this forfeited argument here. Even if Sharp's search condition required reasonable suspicion, as the parties assumed below, that standard was easily satisfied. We note, however, that the government's *Samson* analogy is not obvious. Unlike Sharp's, the search condition in *Samson* explicitly authorized searches "at any time ... *with or without cause*," 547 U.S. at 846, 126 S.Ct. 2193 (emphasis added).

*Id.* at 754. And it further explained:

Each time we have upheld a suspicionless search under *Samson*, the defendant was, like Samson himself, subject to a release condition that authorized such searches, and we considered that fact in our analysis. *See United States v. Massengill*, 769 F. Appx 342, 343, 346 (6th Cir. 2019) (condition permitted search "at any time without reasonable suspicion"); *United States v. Brown*, 832 F. Appx 397, 400-01 (6th Cir. 2020) (same); *United States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016) (adopting district court opinion that construed search condition to permit searches without reasonable suspicion); *United States v. Smith*, 526 F.3d 306, 309-11 (6th Cir. 2008) (defendant on community release was told that "his home was his prison" and he could be searched "as if he were still in the facility"). And our sister circuits have specifically rejected the notion that *Samson* authorizes suspicionless parolee searches regardless of the search condition or background state law. *United States v. Henley*, 941 F.3d 646, 650-51 (3d Cir. 2019) (Hardiman, J.); *United States v. Freeman*, 479 F.3d 743, 747–48 (10th Cir. 2007) (McConnell, J.).

*Id.* at 756. The Circuit has subsequently declined to reach the question of whether the "at any time" language permits a suspicionless search:

The parties differ slightly regarding whether the search condition in Tinsley's Conditions of Supervision required police to have reasonable suspicion prior to searching him. Tinsley contends that this provision does not allow suspicionless searches and instead requires reasonable suspicion based on Ohio Rev. Code § 2967.131(C)'s "reasonable grounds" standard. Conversely, although the government devotes most of its brief to arguing that the officers had reasonable suspicion for the search, it briefly argues that Tinsley may be subject to a suspicionless search because his Conditions of Supervision allow warrantless searches "at any time." (Appellee Br. 4, 15; Conditions of Supervision, R. 18-1, PageID 57, ¶ 7.)

> The search condition here does not specify the level of suspicion required to justify the warrantless search, instead specifying only that the search may happen "at any time." (Conditions of Supervision, R. 18-1, PageID 57, ¶ 7.) But this case does not require us to determine whether the search condition allows for a lower standard than the "reasonable grounds" standard in Ohio Rev. Code § 2967.131(C). Even assuming the officers needed reasonable suspicion to justify the initial search of Tinsley and his truck, the circumstances here supported a finding of reasonable suspicion, and thus the search satisfies either *Griffin* or *Samson*.

*United States v. Tinsley*, 2023 WL 34240, at *3 (6th Cir.). Given this guidance, and because as set forth above, the Court finds the state parole officer had reasonable suspicion to support the search, the Court need not reach the Government's argument that the "at any time" language authorized suspicionless searches.

Watson's "severely diminished" expectation of privacy, *Samson*, 547 U.S. at 852, the State's "significant" interest in supervision, *Sharp*, 40 F.4th at 753, and the terms of post-release control communicated to (and acknowledged by) Watson (permitting "the warrantless search of [his] personal property, or property that [he has] been given permission to use . . . at any time") in combination demonstrate that the search at issue here was reasonable. The Court finds under the totality of the circumstances test, therefore, that the search was reasonable and complied with the Fourth Amendment.

Affidavit / Probable Cause

Watson next contends that the subsequent search of his phone was illegal because the federal warrant lacked probable cause. Again, to establish probable cause, officers must establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 And probable cause is "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Bennett*, 905 F.2d at 934 (citation omitted). "[S]o long as the magistrate had a substantial basis for . . . concluding that a search

16

would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Lapsins*, 570 F.3d at 763 (citation and internal quotation marks omitted).

Watson argues that although Van Vorhis wrote in his affidavit that the video shows "Watson's hand [] holding a Taurus G3C, .9mm firearm", he "provides no explanation or support for the conclusion that the video includes Mr. Watson's hand." (Doc. 10-4, at 4). He argues that the hand in the video "is an African American hand with no visible tattoos", whereas Watson's hands "are both covered in tattoos." *Id.* at 4-5. He emphasizes that the hearing officer later found that the video did not depict Watson's hand. *Id.* He contends that if the video quality was clear enough that the serial number on the firearm is visible, as Van Vorhis attested, such a video would also show tattoos on a hand if they were present. *Id.* at 5. Watson further states that "Van Vorhis should have seen that" the hand in the video was not his, and instead "assumed that the hand in the video belonged to Mr. Watson." (Doc. 12, at 2).

In assessing the sufficiency of an affidavit supporting a warrant, the Court looks only to the four corners of the affidavit. *Brooks*, 594 F.3d at 492. Thus, Watson's argument about what was not included in the affidavit (including any description or comparison of Watson's hands to the video), or what the hearing officer determined, are not relevant to the Court's probable cause analysis.

The affidavit here provided the following. First, Watson was on state and federal supervision, including for an April 2022 federal conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and that he had been identified by the Ohio Department of Rehabilitation and Correction as being involved in a criminal street gang. (Doc. 10-4, at 3-4). Second, Watson had been arrested on a burglary charge, and his parole officer "did take possession of [his] Apple I Phone 14." *Id.* Third, Watson provided the officer the unlock code for

17

the cell phone. *Id.* Fourth, in searching the phone, Lozano found the at-issue video, in which (Van Vorhis attests) "Watson's hand is holding a Taurus G3C, .9 mm firearm." *Id.* Fifth, that officers investigated the source of the firearm based on its serial number and interviewed both King and Allison; Allison remembered hanging out with Watson "from time to time in the last few months" and specifically recalled one time telling Watson there was a firearm in his backpack, getting out of Watson's truck and leaving the backpack in the vehicle with Watson a few times, and that he "thought maybe during one of those time, Watson grabbed his Taurus from his backpack." *Id.* at 5-6.

The Court finds these facts provided probable cause for the search of Watson's phone. Contrary to Watson's argument that the warrant was based solely on an ungrounded assumption regarding the video depicting Watson's hand, the facts demonstrate the phone belonged to Watson (or at least was in his possession and he could access it via an unlock code). This connection between Watson and the phone further strengthened by the fact that the video is identified as having been recorded on April 20, 2024, just two days prior to Watson's arrest on April 22. These facts also show Watson had access to the specific firearm pictured in a video contained on that phone. Moreover, there were facts related to Watson's previous federal felon in possession of a firearm conviction. *See United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009) (holding that, although not dispositive, a defendant's criminal history "is relevant to the probable cause inquiry," particularly where, as here, the search was for evidence related to the same crime because "a 'person of reasonable caution' would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause.") (quoting *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006)). Together, these facts provided a "fair probability" that evidence of a crime would be found on Watson's phone. Probable cause requires no more.

18

*See United States v. Frechette*, 583 F.3d 374, 380 (6th Cir. 2009) ("Certainty has no part in a probable cause analysis.").

The Court therefore agrees with the Government that the totality of the circumstances in the search warrant affidavit provided the Magistrate Judge with a substantial basis to find probable cause to believe Watson's cell phone contained evidence that he violated 18 U.S.C. § 922(g)(1). *See Gates*, 462 U.S. at 236; *Brown*, 732 F.3d at 573; *Lapsins*, 570 F.3d at 763.

*Good Faith Exception / "Bare Bones" Affidavit*

Although not necessary to reach the question because the Court finds the Magistrate Judge had a substantial basis upon which to find probable cause, the Court also concludes that even if the affidavit did not provide probable cause, the good faith exception would apply.

In *United States v. Leon*, the Supreme Court created an exception to the exclusionary rule for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). Following *Leon*, courts presented with a motion to suppress claiming a lack of probable cause must ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)). Only when the answer is "yes" is suppression appropriate. One circumstance in which the good faith exception does *not* apply is when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.

The Sixth Circuit has explained, however, that "[a] bare-bones affidavit should not be confused with one that lacks probable cause." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017). "An affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts

and inferences to sustain the magistrate's probable-cause finding; rather, it must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *Id.* (citing *Helton*, 314 F.3d at 824). "The distinction is not merely semantical" and "[t]here must be daylight between the 'bare-bones' and 'substantial basis' standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function." *Id.*

Even if the Court were to find the affidavit lacking in probable cause (and to be clear, it does not do so), it is not bare bones by any stretch. The Sixth Circuit has explained that it

> has reserved the moniker "bare bones" for affidavits that are either "completely devoid of any nexus between" the illegal activity and the place to be searched or the item to be seized, *Carpenter*, 360 F.3d at 595-96, or "merely state[] suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge," *Christian*, 925 F.3d at 312 (cleaned up). Put another way, bare bones affidavits nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied.

*United States v. Sanders*, 106 F.4th 455, 468 (6th Cir. 2024). By contrast, "where an affidavit presents a modicum of evidence, however slight, showing *some* connection, regardless of how remote it may have been between the criminal activity at issue and location of the search, there exists a minimally sufficient nexus necessitating application of the good faith rule." *Id.* at 469 (citation modified).

The search warrant affidavit at issue here provided that (1) Watson possessed a phone, to which he had a passcode; (2) on that phone was a recently-recorded video of a hand holding a firearm; and (3) Watson had access to that particular firearm. This is plenty to meet the "minimally sufficient nexus" between the phone and the suspected criminal activity. As such,

even if the warrant were lacking in probable cause, the *Leon* good faith exception would apply and suppression would not be an appropriate remedy.

**CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Watson's Motion to Suppress (Doc. 10) be, and the same hereby is, DENIED.


 *s/ James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: July 2, 2025